IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                   No. CR 16-3463 RB

JESSE DENVER HANES,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Jesse Denver Hanes' Motion to Transfer Venue. (Doc. 17.) Defendant requests that the Court transfer the trial to Albuquerque, New Mexico, because of the extensive media coverage of the case and the increased possibility of a prejudiced jury in Doña Ana County attendant to that coverage. The Government opposes this motion. (Doc. 22.) Defendant addresses and justifies the untimely filing of his motion, and though it was a late submission, the Court chooses to move forward on the merits. Having considered the arguments of the parties, relevant law, and being otherwise fully informed, the Court **DENIES** the Motion to Transfer Venue.

**I.    BACKGROUND**

On August 23, 2016, an Indictment was returned against Defendant on the following counts: (1) Attempted Carjacking, 18 U.S.C. § 2119(1); (2) Using and Carrying and Brandishing a Firearm During and in Relation to a Crime of Violence, and Possession and Brandishing a Firearm in Furtherance of Such Crime, 18 U.S.C. § 924(c)(1)(A)(ii); (3) Carjacking Resulting in Serious Bodily Injury, 18 U.S.C. § 2119(2); (4) Using, Carrying, and Discharging a Firearm During and in

Relation to a Crime of Violence, and Possessing and Discharging a Firearm During and in Relation to a Crime of Violence, and Possession and Discharging a Firearm in Furtherance of Such Crime, 18 U.S.C. §§ 924(c)(1)(A)(iii), (c)(1)(C)(i); and (5) Felon in Possession of a Firearm and Ammunition, 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. 10.)

The Complaint alleges that Defendant fired a handgun at Hatch Police Officer Jose Chavez on August 12, 2016. (Doc. 1 at 3.) Officer Chavez died as a result of the gunshot wound. Defendant was driving a silver 1991 Lexus sedan, bearing an Ohio license plate. Defendant was with two other passengers, both of whom exited the vehicle at some point. One of the passengers, James D. Nelson, heard another gunshot and turned to see that Defendant had shot himself in the leg or groin. (*Id.* at 3–4.) Defendant fled south on Interstate 25, and pulled into the Ft. Seldon rest area near Radium Springs, New Mexico. (*Id.*) At the rest area, Defendant approached two individuals and demanded the keys to their vehicle at gunpoint. (*Id.*) When they refused to give the keys, Defendant walked away. (*Id.*) Defendant then approached a third victim and demanded his/her car keys at gunpoint. (*Id.*) This person complied and gave Defendant the keys to a rented red 2017 Chevrolet Cruz. (*Id.*) Defendant demanded that the victim get in the car, and when the victim refused, Defendant fired his handgun, striking the victim in the leg, causing serious bodily injury. (*Id.*) Defendant then fled in the victim's car. (*Id.*)

Witnesses notified Doña Ana County Sheriff's Office (DASO) of the incident. (*Id.*) DASO located Defendant and began chasing the vehicle, ultimately deflating the tires near the 23000 block of New Mexico Highway 185. (*Id.*) The vehicle crashed shortly thereafter. (*Id.*) Defendant brandished a handgun and refused to follow DASO's verbal commands. (*Id.* at 4–5.) Defendant eventually submitted to DASO's commands and exited the vehicle. He was taken into custody at approximately 5:00 p.m.

The case received extensive local and national media attention. Defendant filed exhibits showing that Officer Chavez was well respected in Doña Ana County. Officer Chavez graduated from Doña Ana Community College, and at the time of his death was attending New Mexico State University ("NMSU") in Doña Ana County. His funeral was held at the NMSU Pan American Center at no cost to his family, and a number of community leaders were speakers. (*See* Def. Exhibit A.) Defendant included a list of 24 media headlines ranging from 8/15/16 to 9/26/16. (Doc. 17 at 14.) Representative titles of the headlines include "Officer will be Remembered as a Hero in Hatch," "Governor Susana Martinez Orders Flags Flown at Half-Staff in Honor and Mourning of Hatch Police Officer Jose Chavez," and "Thousands Mourn Slain Hatch Officer Chavez." (*Id.*) The list does not specify the outlets that published these articles, so it is unclear if all of them are specifically local to Doña Ana County.

## II.   LEGAL STANDARD

The United States Constitution provides that "[t]he trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed," Art. III, § 2, cl. 3, before a "jury of the State and district wherein the crime shall have been committed." Amdt. 6. Criminal defendants have the right to a trial by "an impartial jury," Amdt. 6, and to due process of law, Amdt. 5. A defendant's request to transfer venue should be granted if "extraordinary local prejudice will prevent a fair trial." *United States v. Skilling*, 561 U.S. 358, 378 (2010). The Tenth Circuit has held that prejudice may not be presumed from negative community sentiment or pretrial publicity except in cases where "inflammatory pretrial publicity so permeated the community . . . that the publicity in essence displaced the judicial process, thereby denying the defendant his constitutional right to a fair trial." *United States v. McVeigh*, 153 F.3d 1166, 1181 (10th Cir. 1998).

Federal Rule of Criminal Procedure 21(a) provides that:

> Upon the defendant's motion, **the court must transfer** the proceedings against that defendant to another district **if the court is satisfied that so great a prejudice against the defendant exists** in the transferring district that the defendant cannot obtain a fair and impartial trial there.

(Emphasis added.)

It is within the discretion of the trial court to grant or deny motions for a change of venue. *See United States v. Neal*, 718 F.2d 1505, 1510 (10th Cir. 1983). Absent abuse of that discretion, the ruling will not be disturbed on appeal. *Id.* The defendant bears the burden of establishing pretrial prejudice that warrants such a change of venue. *Stafford v. Saffle*, 34 F.3d 1557, 1566 (10th Cir. 1994). There are two contexts where due process may require a change of venue following pretrial publicity. *See Gardner v. Galetka*, 568 F.3d 862, 887–89 (10th Cir. 2009). Courts should consider granting requests to change venue "where pretrial publicity is so pervasive and prejudicial that a court could not expect to find an unbiased jury pool in the community." *Id.* (citations omitted). A court should also consider transferring venue "where the effect of pretrial publicity manifested at jury selection is substantial enough to indicate the existence of prejudice within the jury pool." *Id.* (citations omitted).

In his Motion, Defendant cites *United States v. Campa*, an Eleventh Circuit case, for the proposition that "[p]rejudice requiring a change of venue is presumed where wide spread pervasive publicity against the defendant and/or extensive prejudicial publicity saturates a community where he or she is to be tried." *United States v. Campa*, 459 F.3d 1121, 1143 (11th Cir. 2006). The defendants in that case, however, used surveys to gauge the temperament of the community where the trial was to be held. *Id.* The Eleventh Circuit held that the trial court did not abuse its discretion when it declined to give "substantial weight" to those surveys when denying a motion to transfer venue. *Id.* In fact, the case reiterates the notions that a district court's careful and thorough voir dire is sufficient to rebut a presumption of jury prejudice, and that the burden placed upon the defendant

is an "extremely heavy one." *Id.* at 1143. In that case, as in the instant case, the defendants submitted examples of news materials. *Id.* at 1145. The trial court said that the articles about the defendants were "too factual and too old to be inflammatory or prejudicial." *Id.* The articles submitted by the *Campa* defendants were published about a year prior to the court's ruling on the change of venue motion. *Id.* In this case, the articles appear to be similarly factual, and similarly old. *Campa* does not provide a meaningful distinction upon which to grant Defendant the relief he seeks, but rather provides further support for denying this motion.

The presumption of prejudice is rarely found based on pre-trial publicity alone. *See United States v. Abello-Silva*, 948 F.2d 1168, 1177 (10th Cir. 1991) ("Presumed prejudice is rarely invoked and only in extreme situations."). "[P]rejudice will only be presumed where publicity 'created either a circus atmosphere in the court room or a lynch mob mentality such that it would be impossible to receive a fair trial.'" *Goss v. Nelson*, 439 F.3d 621, 628 (10th Cir. 2006) (quoting *Hale v. Gibson*, 227 F.3d 1298, 1332 (10th Cir. 2000)). In his motion, Defendant asserts that there are six factors that courts analyze to determine whether prejudice should be presumed based on pretrial publicity.[1] However, it is unclear that the Tenth Circuit has ever employed this six-factor analysis. In fact, of the six factors proposed by Defendant, only two are sourced from a Tenth Circuit case. The other four come from the Ninth and Fourth Circuits, and are therefore not binding precedent on this Court. It seems that Defendant has compiled a list of factors judges have considered in making their

---

[1] Defendant's proposed factors are as follows: "(1) whether the media accounts have been primarily dispassionate and factual or editorial and in inflammatory [sic] in nature; *Goss* [*v. Nelson*], 439 F.3d 629 [(10th Cir. 2006)]; (2) whether there is a barrage of inflammatory publicity immediately prior to trial amounting to a huge wave of public passion; *Goss*, 439 F.3d at 629; (3) whether there has been a significant length of time between and inflammatory publicity and the trial; *Hayes* v. *Ayers*, 632 F.3d 500, 511-12 (9th Cir. 2011); (4) whether media accounts contain inflammatory or prejudicial information not admissible at trial; *Daniels v. Woodford*, 428 F.3d 1181,1211 (9th Cir. 2005); (5) whether the defense is a significant source of the publicity; *Daniels*, 428 F.3d at 1211; (6) whether a substantial [sic] better panel can be sworn in another place (in other words, whether the publicity is national or local); *United States v. Bakker*, 925 F.2d 728, 733 (4th Cir. 1991)." (Doc. 17 at 5.)

decisions, but they are not factors the Tenth Circuit has relied upon. Nonetheless, should this Court apply the proposed factors, they weigh against Defendant for all the reasons addressed in the section below.

### III.   DISCUSSION/ANALYSIS

Defendant cannot establish presumed prejudice. The high profile nature of the pre-trial publicity does not render Defendant's case necessarily prejudiced in Doña Ana County. Defendant claims that any potential jury selected in Doña Ana County will be "infected" by the pre-trial publicity, and that alone warrants a venue transfer. (Doc. 17.) Granted, it is unreasonable to expect that the southern New Mexico community will not have heard of the alleged crime. However, a venire's exposure to the fundamental facts of an incident will not presumptively deprive a defendant of due process. *See Murphy v. Florida*, 421 U.S. 794, 799 (1975).

Defendant has not shown that a circus atmosphere was created. "[P]re-trial publicity in topical criminal cases is inevitable." *Abello-Silva*, 948 F.2d at 1176. If all trials that received wide coverage were transferred, few trials would take place locally. Defendant has not demonstrated that his circumstances are so extraordinary that he will be unable to obtain a fair trial in Doña Ana County. Cases far more notorious and publicized than Defendant's were tried in the districts where the crimes were perpetrated. Dzhokhar Tsarnaev, the so-called "Boston bomber" was tried in Boston. *In re Tsarnaev*, 780 F.3d 14, 15 (1st Cir. 2015) (refusing to compel the district court to change venue out of Boston). Dylann Roof, recently convicted of perpetrating the Charleston church massacre, was charged on 33 counts, including hate crimes in South Carolina. Roof did not challenge the venue, and his trial was held locally. *United States v. Roof*, No. 2015-CR-00472 (D.S.C. July 20, 2015). While Defendant's alleged crimes struck the heart of this community, if the Boston and Charleston cases were not exceptional enough to warrant new venues, Defendant's

certainly is not. The Charleston church massacre and the Boston bombing received extraordinary, relentless media coverage. It would have been impossible to find a jury who had not heard of the crime. We cannot ask for opinion free, blank slate juries, just fair ones.

What's more, the jury pool for this case will be pulled from registered voters in eleven counties in the southern part of New Mexico: Catron, Chaves, Doña Ana, Eddy, Grant, Hidalgo, Lea, Lincoln, Luna, Otero, and Sierra Counties. *See In re Administrative Orders*, Doc. 42, Att 1 (Modified Jury Plan) (D.N.M. Oct. 27, 2015). The press covered the shooting of Officer Chaves extensively, but that alone does not render the trial unfair because the coverage has been largely "factual, as opposed to inflammatory." *United States v. Misla-Aldarondo*, 478 F.3d 52, 58 (1st Cir. 2007). The news stories about Defendant were largely factual, and have not contained confessions or the blatantly prejudicial information that cases warranting a transfer have had. *See e.g., United States v. Haldeman*, 559 F.2d 31, 61–62 (D.C. Cir. 1976) (holding that the Watergate defendants were not entitled to a change of venue because the pretrial publicity, while massive, was largely unemotional factual accounts of events and the progress of the investigations). The trial in this case will take place in June 2017, approximately ten months after the alleged event. This is certainly long enough for the initial impact on the southern New Mexico community to soften.

If the Court were to apply Defendant's proposed six-factor test, the factors would weigh heavily toward keeping the trial in Las Cruces. First, Defendant has not provided compelling evidence of inflammatory media coverage, nor has he cited specific instances of alleged prejudicial coverage. Defendant mentions an interview of another defendant, but failed to provide documentation of it. The article provided by Defendant does not even mention Defendant's name. It is a description of Officer Chavez's funeral, not a recounting of the alleged incident. Second, there has been no "barrage of inflammatory publicity immediately prior to trial amounting to a huge wave

of public passion." This case is not yet immediately prior to trial, so this issue cannot be addressed. Third, there has been a significant amount of time between the initial publicity and the instant motion. There will be even more time between the initial publicity and the trial. The spread of time between the initial media rush and the trial will allow perceptions that may have been inflamed by the media to simmer down. Fourth, Defendant has not shown that any of the media accounts contain "inflammatory or prejudicial information not admissible in trial." Fifth, Defendant is not a source of the publicity surrounding the case, but the publicity is neither inflammatory nor prejudicial. Sixth, Defendant has not shown that a substantially better panel could be sworn in at another venue. Defendant has provided no evidence that any of these factors weigh in favor of transferring the venue.

The Court has procedures in place to help select impartial jurors. The screening questionnaires and voir dire will suffice to achieve a panel of 12 impartial jurors, and alternates, as necessary. Defendant has not shown that this case meets the requirements for a change of venue based on presumed prejudice.

### IV. CONCLUSION

For all of the forgoing reasons,

**IT IS ORDERED THAT:**

Defendant Mr. Hanes' Motion to Transfer Venue is **DENIED.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**